# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1. I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006. As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States. I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters. Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2. Investigation reveals that, on or about Wednesday, June 18, 2025, **David MENDEZ-CARDENAS** was found in the United States illegally, upon being encountered, in Loíza, Puerto Rico, while present in the United States illegally, after having been deported subsequent to an aggravated felony conviction. In addition, during encounter **David MENDEZ-CARDENAS** provided false information to federal officers during indicating to be a Lawfully Admitted Permanent Resident legally present in the United States. Therefore, this Affidavit is made in support of a Criminal Complaint against **David MENDEZ-CARDENAS** based on violation of **Title 8, *United States Code*, Section 1326(a) & (b)(1),** Re-entering the United States after being previously removed, subsequent to a felony conviction.

3. I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this

1

investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

## **PROBABLE CAUSE**

4. On or about Wednesday, June 18, 2025, Border Patrol Agents (BPAs) were conducting roving patrol operations at or near the Piñones, Loíza, Puerto Rico, in an area known for frequent drug & migrants smuggling activity.

6. During patrol, BPAs observed a white van occupied by three (03) individuals.

7. As BPAs passed the vehicle, the van occupants immediately lowered their heads, avoiding eye contact with the agents.

8. Based on the vehicle type, the occupants' behavior and the proximity to a known high-risk smuggling area, BPAs initiated a consensual encounter.

9. One BPA exited the service vehicle and approached the van on foot.

10. Upon seeing the approaching agent, the van driver abruptly drove forward in an attempt to escape and evade law enforcement contact.

11. Eventually the van became to a complete stop, when the driver found himself boxed in between vehicles, during his escape attempt.

12. The van came to a complete stop about 40 yards away from the initial encounter area.

13. BPAs quickly approached the vehicle and observed two of the three subjects attempting to flee.

14. BPAs intervened and detained all three individuals to conduct immigration interviews.

15. BPAs questioned all three (03) subjects as to their citizenship and nationality.

16. All three (03) subjects admitted being citizens & nationals of the Dominican Republic.

17. Two of the individuals initially claimed to be Lawfully Admitted Permanent Residents (LPRs), while the third admitted to being in the United States illegally.

18. Record checks were conducted on all three subjects.

19. It was determined that one of the subjects claiming to be LPR status, later identified as **David MENDEZ-CARDENAS** was in fact an illegal alien with a prior deportation order and a felony conviction for possession of cocaine for which he served 18 months imprisonment in Connecticut. The remaining subject of the two that initially indicated that was on LPR status, was in fact legally present and released on site on his own recognizance.

20. The third remaining subject was found to be inadmissible and placed under arrest.

21. Both arrested subjects were arrested and transported to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico for further investigation, processing and removal proceedings.

22. Once at the Ramey Station, both subjects, including **MENDEZ-CARDENAS** photograph & fingerprints were taken and entered to different law enforcement database systems. Record checks revealed that **MENDEZ-CARDENAS** possess prior immigration history.

23. As to **MENDEZ-CARDENAS's** immigration & criminal history:

    (a) In 1999, **MENDEZ-CARDENAS** illegally entered the United States through San Juan, Puerto Rico.

3

(b) **MENDEZ-CARDENAS** married his wife who is from Puerto Rico.

(c) On April 08, 2003, **MENDEZ-CARDENAS** adjusted status in San Juan, Puerto Rico to an IR-6 status of Lawful Permanent Resident.

(d) On March 15, 2005, **MENDEZ-CARDENAS** was convicted in the Superior Court, Milford, Connecticut for possession of narcotics (cocaine) in violation of Section 21a-279(a) of the Connecticut General Statutes.

(e) **MENDEZ-CARDENAS** was sentenced to 18 months imprisonment.

(f) On June 07, 2006, an Immigration Judge Order of Removal was issued against **MENDEZ-CARDENAS**, pursuant his narcotics / drug conviction and, thus, his permanent resident status was also terminated.

(g) On November 14, 2006, **MENDEZ-CARDENAS** was officially and physically removed from the United States to the Dominican Republic from the Port of New York, NY.

24. Border Patrol Agents advised **MENDEZ-CARDENAS** of his right to legal representation and his right to speak with the Consular Officer of his native country, the Dominican Republic.

25. **MENDEZ-CARDENAS** re-entered the United States at a place other than a designated Port of Entry.

26. **MENDEZ-CARDENAS** provided false statement to Border Patrol Agents (BPAs) regarding his immigration status in the United States, indicating & claiming being a Lawfully Admitted Permanent Resident (LPR), with legal documents to be in the United States legally.

27.     **MENDEZ-CARDENAS** is a national and citizen of the Dominican Republic who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States. Furthermore, **MENDEZ-CARDENAS** was not inspected, admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

28.     **MENDEZ-CARDENAS** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

29.     Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, Title 8, _United States Code,_ Section 1326(a) & (b)(1).

Luis Polo
Border Patrol Agent

Subscribed and Sworn before me pursuant to FRCP 4.1 at 6:28 PM by telephone, this 23rd day of June 2025.

Honorable Héctor Ramos-Vega
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO