**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>     Plaintiff,<br><br>          v.<br><br>**DAVID MÉNDEZ-CÁRDENAS,**<br>     Defendant. | Criminal No. 25-291 (ADC) (MBA) |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant David Méndez-Cárdenas's motion to dismiss the Indictment. (ECF No. 30). In his motion, Méndez argues that his prior removal from the United States was unlawful and therefore an invalid predicate for illegal reentry of a removed noncitizen[1] after a felony conviction, the sole offense charged in the indictment. (*Id.*). In response, the Government argues that Méndez has failed to meet any of 8 U.S.C. § 1326(d)'s mandatory statutory requirements. (ECF No. 36). Specifically, that Méndez failed to exhaust his administrative remedies, cannot show he was deprived of the opportunity for judicial review, or that the removal order was fundamentally unfair. (*Id.*). Méndez replied, arguing that structural errors that mired the process excuse any failure under 8 U.S.C. § 1326(d) and reiterating that the Connecticut statute with which he was charged is categorically overbroad and therefore an invalid predicate for his prior administrative detention and subsequent removal. (ECF No. 41). U.S. District Judge Aida M. Delgado-Colón referred the motion to me for a Report and Recommendation. (ECF No. 37). I held an evidentiary hearing on Méndez's motion on

---

[1] Consistent with recent U.S. Supreme Court practice, the Court uses "noncitizen" in lieu of the statutory term "alien." *See, e.g., Barton v. Barr*, 590 U.S. 222, 226 n.2 (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'") (citing 8 U.S.C. § 1101(a)(3)); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.).

April 24, 2026. (ECF No. 48).

For the reasons set forth below, I recommend the motion to dismiss the indictment be **GRANTED**.

## BACKGROUND

### A. Connecticut Immigration Proceedings

Méndez, a national of the Dominican Republic, first illegally entered the United States through San Juan, Puerto Rico in the 1990s.[2] He married a United States citizen a few years later[3] and became a lawful permanent resident in 2003. (ECF No. 1-1 ¶¶ 23(b)-(c)). In October 2004, while driving a car he had "just bought" (ECF No. 30-4 at 38), Méndez was arrested and charged in Connecticut state court with failure to obey an officer's signal, operating a motor vehicle without a license, not having insurance, misuse of plates, reckless endangerment, interfering with an officer, operating an unregistered vehicle, possession of narcotics, possession with intent to sell, and possession within a school zone. (ECF No. 36 at 3). Méndez ultimately pled guilty to possession of narcotics in violation of Section 21a-279(a) of the Connecticut General Statutes. (ECF No. 30 at 3-4). He was sentenced on March 15, 2005 to five years' imprisonment and served a total of 18 months before being detained by Immigration officials around March 2006. (*Id.*). Méndez received a Notice to Appear (NTA) dated March 29, 2006 explaining that Méndez was removable pursuant to

> Section 237(a)(2)(B)(i) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less or marijuana.

---

[2] This is the first of many inconsistencies in Méndez's factual recitations that will be discussed in further detail below as necessary.

[3] The exact marriage date attested by Méndez at the evidentiary hearing differs from the marriage certificate. (*See* GE 2).

2

(ECF No. 30-1 at 4). The NTA stated that "If you so choose, you may be represented in this proceeding, at no expense to the Government, by an attorney or other individual authorized and qualified to represent persons before the Executive Office for Immigration Review, pursuant to 8 CFR 3.16. […] A list of qualified attorneys and organizations who may be available to represent you at no cost will be provided with this Notice." (GE 4). It also included a checked box that indicated "[a]ttached is a list of organizations and attorneys which provide free legal services." (*Id.*). Méndez's signature appears in the NTA within the section titled "Request for Prompt Hearing," waiving the right to a 10-day period and requesting "to expedite a determination in my case." (*Id.*).

On April 11, 2006, Méndez received a Notice of Hearing in Removal Proceeding. (DE C). It notified Méndez that his hearing would be the following day. (*Id.*). It also indicated that "[y]ou may be represented in these proceedings, at no expense to the Government, by an attorney or other individual who is authorized and qualified to represent persons before an Immigration Court." (*Id.*). Méndez was given this form prior to each of his hearings before the Immigration Judge (IJ). (GE 5-8).

Méndez had his first hearing before an IJ on April 12, 2006.[4] (ECF No. 30 at 4). The hearing was held via televideo conference and Méndez was assisted by a Spanish-speaking court interpreter. (ECF No. 3-4 at 1). The IJ explained to Méndez that the hearing was to "decide if you should be deported from the United States and whether there is any way you can stay in this country under the Immigration laws." (*Id.* at 1-2). The IJ further explained to Méndez that "[i]n this hearing, you have the right to an attorney to represent you at your own expense. And the officer [at the detention facility] can give you a list of organizations that may be willing to represent you at little or no cost. You want some time to get a lawyer or you want to start your hearing now?" (*Id.* at 2). Méndez responded that he thought "you should provide a lawyer for me because I don't have means and I don't have family

---

[4] Méndez appeared before the IJ five times – April 12, April 26, May 10, May 17, and June 7, 2006. A Spanish-speaking court interpreter assisted Méndez at each of the hearings.

here and I don't have the . . . money . . . the funds to get a lawyer." (*Id.*). The IJ responded, "Well, sir, how am I going to get the lawyer for you? Am I going to pay for the lawyer?" (*Id.*). Méndez this time requested "the town" provide him with a lawyer. (*Id.*). The IJ added: "Well, sir, I guess the only thing you can do is I …, frankly, find it unlikely that you're going to find somebody on the legal aid list to help, although. . . it might be possible. But if you want some time to contact somebody on the list, I'll give you that time. Or I can start your hearing now." (*Id.* at 3). Méndez asked to be released to work to be able to pay for an attorney, but the IJ responded he did not think Méndez could "be released under the Immigration laws" because of his conviction. (*Id.*). The IJ said that he would "discuss [bond] in a minute," but failed to address it. (*Id.* at 5). Eventually, the IJ gave Méndez two weeks to obtain an attorney, warning that if Méndez was unable to get an attorney, he would have to represent himself. (*Id.* at 4-5).

At the second hearing held on April 26, Méndez explained that he was unable to get an attorney. (ECF No. 30-4 at 7). Méndez had called one of the attorneys on the list and was told they were not providing Immigration Court services anymore. (*Id.*). He also explained that he was not in contact with his family or wife, so they could not help him retain representation. (*Id.*). The IJ explained to Méndez that because he was unable to obtain an attorney, they would start his case without one. (*Id.*). When Méndez again expressed his desire to be represented, the IJ clearly stated, "[y]ou don't get attorneys appointed in Immigration Court. So you have to represent yourself." (*Id.* at 8). Thus, Méndez's removal hearing began. The IJ confirmed that Méndez was a native and citizen of the Dominican Republic, that his status was adjusted to permanent resident on April 8, 2003, and that he was convicted on March 15, 2005 of possession of narcotics in Connecticut. (*Id.* at 8-9). Méndez confirmed that he illegally entered the United States in 1996. (*Id.* at 10). He then explained that he did not wish to return to the Dominican Republic because he was afraid he would be killed there like his brother. (*Id.* at 11). When asked by the IJ whether he wanted to pursue an asylum application or be

4

removed, Méndez requested the opportunity to apply for asylum. (*Id.* at 12). A court officer provided Méndez with an asylum application, and the hearing was continued until May 10, 2006. (*Id.* at 15-16). Méndez again requested bond, but the IJ sated "that's not going to happen" and to "stop wasting" time. (*Id.* at 12, 16).

Prior to Méndez's third appearance before the IJ, he mailed a letter requesting a continuance "until such time I may be able to secure said legal counsel." (ECF No. 30-6). Méndez explained at the hearing that a friend in jail had written the letter since he cannot speak English. (ECF No. 30-4 at 17). His friend had been transferred, however, and thus was unable to help him fill out the asylum application in English. (*Id.* at 17-18). Once again Méndez brought up the issue of bond and the IJ responded that he had "already explained…that you can't be released on bond because of your felony conviction." (*Id.* at 22). Still, the Homeland Security representative offered to help coordinate with the prison so that Méndez could receive assistance from a Spanish speaking counselor to fill out the petition. (*Id.* at 18-21). The IJ continued the hearing for another week. (*Id.* at 21-22).

Méndez appeared a fourth time before the IJ on May 17, 2006. (*Id.* at 23). The IJ explained that he received Méndez's asylum package and would set a hearing for the claim where Méndez could present evidence and make his case for a withholding of removal. (*Id.*). Méndez asked the IJ what drugs he was convicted of having in his car because he did not know what drug it was.[5] (*Id.* at 25).

---

[5] When the IJ asked Méndez at the asylum hearing about his Connecticut arrest, the following exchange occurred:

A.    I was driving and I didn't have a license at the time.

Q.    Well, did they –

A.    And later, the next day, or a day after, the police said that they found drugs in my car.

Q.    Well, is that true?

The IJ told Méndez that the arrest report indicated heroin was found in his car. (*Id.* at 25).

At Méndez's fifth and final hearing on June 7, 2006, he failed to show that he qualified for asylum. The IJ orally announced that he had denied Méndez's application and ordered him removed to Spain, as requested, but should Spain not accept him, to the Dominican Republic. (ECF No. 30-4 at 48). The IJ explained to Méndez, "if you think my decision is wrong, you can appeal it to a higher Court or you can accept it as final. What do you want to do?" (*Id.*). Méndez was unsure about whether he wanted to proceed with an appeal. "I don't know. Do I have to make a decision now? Could I make my decision later? Because I don't want to go back to my country." (*Id.*). The IJ told Méndez that because he wasn't sure, he could reserve appeal and have 30 days to think about it. (*Id.*). The IJ explained the following:

> We're going to give you an appeals package, sir. You must fill this out in English. So you're going to need have – you're going to need to have somebody help you fill this document out. In order for your appeal to be considered, the appeal must be received, not just mailed, it must be received by the Board of Immigration Appeals in Falls Church, Virginia, by close of business on July 7th. So if you want to decide to appeal, you will have plenty of time for mailing. If the appeal is received even one day late, it cannot be considered. If you can't afford the filing fee for the appeal, there is a form in there to request an exemption from it.

(ECF No. 30-4 at 48-49). On August 29, 2006, Méndez sent a letter to the Board of Immigration

---

> A.    Oh, well, I, I didn't have them. I mean, but they were there. They weren't mine. But I had to plead guilty because I didn't have any other option with the pressure from the Judge and the lawyer.
>
> Q.    Well, there – it was heroin, right? Was it heroin?
>
> A.    Uh-huh.
>
> Q.    Well, what's heroin doing in your car?
>
> A.    I don't know. I had just bought the car. I had just bought it three days before.

(ECF No. 30-4 at 38).

Appeals (BIA) explaining that he was requesting to dismiss his appeal. "I do not wish to continue fighting my Immigration case anymore. The reason I wish to have my motion cancelled is because I do not [sic] to stay in jail and wait any more than I already have. I just want to deported [sic] to my original country as soon as possible." (ECF No. 30-8 at 1). Upon receipt of Méndez's letter, the BIA issued an order terminating the appeal. (ECF No. 30-9). On November 14, 2006, Méndez was physically removed from the United States to the Dominican Republic. (ECF No. 1-1 ¶ 23(g)).

### B.  Puerto Rico District Court Proceedings

On June 18, 2025, Méndez was found in Loíza, Puerto Rico by Border Patrol Agents. (ECF No. 1-1 ¶¶ 4-19). On June 26, 2025, the Grand Jury returned an Indictment against Méndez charging him with one count of re-entry of a removed noncitizen following a felony conviction in violation of 8 U.S.C. § 1326(a) and (b)(1). (ECF No. 15).

Méndez then filed a motion to dismiss the indictment, alleging that his previous removal from the United States was neither valid nor lawful and therefore could not serve as the predicate offense for his one-count indictment. (ECF No. 30). Specifically, Méndez argues that "the conviction did not render [him] deportable at all," that he was not given the opportunity to retain counsel, "was denied a full and fair opportunity to litigate his pre-removal detention," and was denied the ability to appeal. (*Id.* at 1-2). The Government opposed, arguing that Méndez failed to satisfy any of the statutory requirements of 8 U.S.C. § 1326(d) and Méndez replied. (ECF No. 36, 41). I held an evidentiary hearing on April 24, 2026. (ECF No. 49). [6]

Prior to the evidentiary hearing, I requested that the parties provide, among other documents, "the appeals packet and materials the IJ provided the defendant." (ECF No. 48). [7] While the

---

[6] Neither party requested transcripts of the hearing. However, in preparation of this Report and Recommendation, the Court reviewed the audio recording.

[7] Judge Delgado-Colón had previously ordered the BIA provide Méndez his "record of proceedings."

government brought Méndez's A-file and related documents, it did not bring the so called "appeals package" handed to Méndez at the final hearing. Thus, it remains unknown what documents and materials the IJ gave Méndez in relation to his BIA appeal. The evidentiary hearing centered around testimony from Méndez, the sole witness, who was assisted by a court interpreter. (ECF No. 49). Méndez's testimony was at odds with statements he made to the IJ and ultimately not credible. For example, he testified that he came to the United States in 1997. At Méndez's April 26, 2006 removal hearing, he claimed to have entered the United States in 1996. (ECF No. 30-4 at 10). The 2025 affidavit to the criminal complaint indicates Méndez came into the United States in 1999. (ECF No. 1-1 ¶ 23(a)). Méndez further testified that after he entered the United States he got married in 1999. But his marriage certificate was dated 2001. (GE 2). While the Court can understand that dates can be hard to remember, these were not the only inconsistencies in Méndez's account. For one, he testified that the car he was driving when arrested in Connecticut belonged to a friend and he had just borrowed it to go to the mall. Méndez had told the IJ that the car was his and that he had bought it a few days prior to the arrest. (ECF No. 30-4 at 38). As a last plot twist, contrary to his own motion to dismiss, Méndez testified that at the hearing he never requested that his appeal be withdrawn. He claimed that he had requested another inmate to write a letter requesting the Court provide him with an attorney or the opportunity to obtain one (like before), not that his appeal be withdrawn and he be deported. And lastly, Méndez testified that he was never told by the IJ or otherwise informed that he could have an attorney for his appeal of the IJ judgment. Because I do not find Méndez credible, I do not base my findings on his testimony. That being said, crucially here, the transcript of the hearings before the IJ clearly reflects that Méndez was not advised of his right to an attorney on appeal.

---

(ECF No. 28). The BIA informed Méndez he should file a FOIA request and ultimately Méndez only received a redacted A-file. (ECF No. 30 at 9 n.5).

**LEGAL STANDARD**

Under 8 U.S.C. § 1326(a), it is unlawful for a noncitizen who has previously been deported or removed from the United States to enter the United States without the express consent of the Attorney General. The Supreme Court has established that, "a collateral challenge to the use of a deportation proceedings as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the [noncitizen] to obtain judicial review." *United States v. Mendoza-López*, 481, U.S. 828, 839 (1987). Therefore, a noncitizen who has illegally re-entered the United States may seek to dismiss the indictment "by challenging the validity of the deportation order." *United States v. Vargas*, 479 F. Supp. 2d 252, 254 (D.R.I. 2007). To do so, a defendant must satisfy three elements: (1) he or she "exhausted any administrative remedies that may have been available to seek relief against the order," (2) "the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review," and (3) "the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d). "Given 'the presumption of regularity that attaches to a final deportation order[,]' the burden of proof in a collateral attack on an underlying deportation order is on the defendant." *United States v. García-Duarte*, 2024 U.S. Dist. LEXIS 101410, *7, 2024 WL 2833090, *3 (quoting *United States v. López-Rodríguez*, 2017 U.S. Dist. LEXIS 149352, *8, 2017 WL 4081898, *3 (D.P.R. 2017)). Failure to satisfy any of the three elements is fatal. *United States v. Luna*, 436 F.33d 312, 317 (1st Cir. 2006) ("These elements are in the conjunctive; therefore, a defendant must satisfy all of them to successfully attack his removal order").

**DISCUSSION**

Méndez meets the requirements of 8 U.S.C. § 1326(d). While at the evidentiary hearing Méndez proved to not be a credible witness, he was successfully able to point out that the record– which begins more than 20 years ago–lacks any indication that he was afforded his due process rights to know he had a statutory right to an attorney on appeal at no cost to the government, and therefore

9

his case satisfies 8 U.S.C. § 1326(d)(1) and (d)(2). Moreover, Méndez was able to show that the order was fundamentally unfair in that possession of narcotics under Conn. Gen. Stat. § 21a-27(a) was not a removeable offense for which he should have been deported in 2006; therefore, 8 U.S.C. § 1326(d)(3) is met as well.

### A.  Administrative Exhaustion

Méndez does not meet the first prong of § 1326(d), the administrative exhaustion requirement. *See United States v. DeLeón*, 444 F.3d 41, 45 (1st Cir. 2006) ("[I]n performing the collateral attack analysis under § 1326(d), the court ordinarily should address the initial test of exhaustion of administrative remedies before going on to the other two tests"). "Generally, to satisfy the exhaustion prong of § 1326, an alien must have filed a motion to reopen, appealed to the Board of Immigration Appeals, and pursued all other administrative remedies available to him." *García-Duarte*, 2024 U.S. Dist. LEXIS 101410, *8 (quoting *United States v. Arita-Campos*, 607 F.3d 487, 491 (7th Cir. 2010)) (cleaned up); *DeLeón*, 444 F.3d at 50 ("It is clear that appeal to the Board of Immigration Appeals (BIA) is such an administrative remedy, and that failure to take such an appeal constitutes as failure of exhaustion.").

Here, while Méndez filed a timely appeal, the record shows that he sent a letter to the BIA requesting to withdraw his appeal. (ECF No. 30-8).[8] The letter explicitly states that he would like to "have [his] motion dismissed" and that he does "not wish to continue fighting [his] Immigration case anymore." (*Id.* at 1). It goes on to say that he "just want[s] to [be] deported to [his] original country as soon as possible." (*Id.*). By terminating his appeal, Méndez terminated his administrative remedies before exhausting them. *DeLeon*, 444 F.3d at 50 ("It is also undisputed that [the defendant] explicitly

---

[8] While Méndez at the 2026 evidentiary hearing claimed that is not what he requested his fellow detainee to write for him in English, I find his testimony unpersuasive. There is simply no reason for a fellow detainee to so misstate Méndez's intentions. Moreover, the BIA's notification that Méndez's appeal had been withdrawn at his request was met with silence. (*See* ECF No. 30-9). This silence speaks volumes. Having himself requested dismissal of his appeal, Méndez simply had no reason to question the BIA's judgment of dismissal.

waived his right to appeal to the BIA when he asked to be deported 'as soon as possible' and subsequently told the IJ he accepted the decision ordering him deported"). And "[a] failure to take such an available administrative appeal is a failure to exhaust administrative remedies within the meaning of 1326(a)." *United States v. Soto-Mateo*, 799 F.3d 117, 120 (1st Cir. 2015) (citing *DeLeon*, 444 F.3d at 50 & n.7).

The First Circuit Court of Appeals has yet to determine whether the exhaustion requirement is subject to exceptions, but has previously "[a]ssum[ed] without deciding that due process concerns sometimes may warrant an exception to the statutory exhaustion requirement." *Soto-Mateo*, 799 F.3d at 121. ("We have reserved judgment on whether to recognize such an exception, *see DeLeón*, 444 F.3d at 51, and it is unnecessary for us to revisit that reservation today. Assuming without deciding that due process concerns sometimes may warrant an exception to the statutory exhaustion requirement, the appellant's case would not qualify for such an exception."). And, in such a scenario, "'a defendant bears the burden of proving his eligibility for any exception to the statutory requirements.'" *United States v. Walkes*, 2017 U.S. Dist. LEXIS 10367, *6-7, 2017 WL 374466, *2 (D. Mass. Jan. 25, 2017) (quoting *Soto-Mateo*, 799 F.3d at 121). Other circuits and district courts within the First Circuit have found that "there is an exception where the waiver of the right to an administrative appeal did not comport with due process." *See, e.g., Walkes*, 2017 U.S. Dist. LEXIS 10367, *6. I agree.

As established by the Supreme Court, "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Mendoza-López*, 481 U.S. at 838. Paying heed to that mandate requires the application of exceptions to the rule codified because of this precedent. *See United States v. Sosa,* 387 F.3d 131, 137 (2d Cir. 2004) ("It would offend the principles enunciated in *Mendoza-López* not to excuse the administrative exhaustion requirement" when the waiver of the right to appeal was not knowing and

11

intelligent); *United States v. Boliero,* 923 F. Supp. 2d 319, 326 (D. Mass. 2013) ("As section 1326(d) was meant to codify the constitutional principle trumpeted in *Mendoza-López,* the exception to exhaustion of administrative remedies applied in that case must be an exception to the statutory framework as well."). This remains true post *Palomar-Santiago.*

Under *Palomar-Santiago,* a noncitizen cannot sidestep § 1326(d)(1) by challenging the "substantive validity" of his removal order. *United States v Palomar-Santiago,* 593 U.S. 321, 322 (2021) (An IJ's "error on the merits does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error."). However, a procedural error that prevents "further review of an adverse decision unavailable would, by definition, not be able to be fixed on further review. Were [*Palomar-Santiago*] foreclosing excusal of exhaustion for all procedural errors as well as all substantive ones, it presumably would have used reasoning applicable to both and not just the latter." *United States v. Castro-Alemán,* 141 F.4th 576, 580 n.2 (4th Cir. 2025). *See United States v. Valdivias-Soto,* 112 F.4th 713, 730 (9th Cir. 2024) (there are "circumstances [where] administrative remedies are not 'available' and therefore need not be exhausted to satisfy a statutory exhaustion requirement"); *United States v. Sow,* 2026 U.S. Dist. LEXIS 37567, *29-30, 2026 WL 509004, *10 (D. Vt. Feb. 24, 2026) ("There is indisputably tension between *Palomar-Santiago* and *Sosa,* but this does not necessarily mean that *Sosa* is overruled… District courts in the Second Circuit have found *Palomar-Santiago* did not overturn *Sosa* and have continued to apply *Sosa's* rule, providing an excuse from the exhaustion of administrative remedies requirement where a waiver of appeal was not knowingly and intelligently made"). And an "integral part of procedural due process [is that] aliens in deportation proceedings have a statutory right to be represented by counsel." *Zeru v. Gonzales,* 503 F.3d 59, 72 (1st Cir. 2007) (cleaned up). For that right to be given meaningful effect, a noncitizen must be appraised of the existence of that right.

"It is well established that the Fifth Amendment entitles aliens to due process of law in

deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993). Moreover, while there is no Sixth Amendment right to counsel in deportation proceedings, noncitizens also have a statutory right to be represented by counsel "at no expense to the government" in deportation proceedings.

> In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.

8 U.S.C. § 1362. Federal regulations further provide that a noncitizen shall be provided "with a list of available free legal services programs." 8 C.F.R. § 238.1(b)(2)(iv). Further, "[a]n appeal from the determination by an Immigration Judge [with respect to custody status or bond redetermination] may be taken to the Board of Immigration Appeals pursuant to § 1003.38." 8 C.F.R. § 1003.19(f); 8 C.F.R. § 1003.1(b)(7) ("Appeals may be filed with the Board of Immigration Appeals from [] [d]eterminations relating to bond, parole, or detention of an alien as provided in 8 CFR part 12346 subpart A"). Additionally, detained noncitizens "who deny that they satisfy any § 1226(c) predicate may challenge their mandatory detention in a *Joseph* hearing." *Nielsen v. Preap*, 586 U.S. 392, 418 n.8 (2019) (citing *Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999)).

Méndez argues that he should be exempted from to administrative exhaustion requirement because his due process rights were violated in that his "removal proceedings suffered from four key procedural defects that infringed on the right to counsel and his overall ability to defend himself against removal." (ECF No. 30 at 19). Specifically, he argues that his due process rights were violated because (1) he was "unlawfully detained," (2) the IJ "misinformed" him about his right to counsel, (3) the IJ only granted one two-week continuance for Méndez to retain counsel, and (4) the IJ did not inform Méndez he had the right to counsel on appeal. (*Id.* at 19-26). While the first three arguments here do not individually rise to the level of a due process violation, they do contribute to the conclusion that Méndez's due process rights were violated when the IJ failed to advise him about his right to

counsel on appeal such that his failure to pursue that appeal cannot now be used to foreclose relief.

To start, and as will be discussed later, the IJ assumed incorrectly that Méndez could not "be released under the Immigration laws [] because of [his] conviction." (ECF No. 30-4 at 3; *see infra* Part C). This does not excuse his failure to discuss the matter or inform Méndez of his right to appeal his detention during the removal proceedings. When the issue of bond first came up at the first hearing, the IJ said that he would "discuss [bond] in a minute" but then failed to address it. (*Id.* at 5). Still, at the time, Méndez never "den[ied] that [he] satisf[ied] any § 1226(c) predicate," *Nielsen*, 586 U.S. at 418 n.8, and there is no statutory right to a *Joseph* hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 289 n.1 (2018) ("Whether respondents are entitled to *Joseph* hearings is not before this Court").

Second, Méndez's argument that he was not afforded due process protections because he was misinformed of his right to an attorney during the proceedings before the IJ is, standing alone, unconvincing. Méndez was told that he could be represented by an attorney "at your own expense" and was given a list of legal providers "that may be willing to represent you at little or no cost." (ECF No. 30-4 at 2; ECF No. 30-2).[9] While the exact phrasing of that right and the discussion that ensued was far from perfect, it does not change the fact that Méndez was clearly informed of his statutory right to counsel. (*See id.*). Additionally, each Notice to Appear given to Méndez before each hearing before the IJ clearly stated that "[y]ou may be represented in these proceedings, at no expense to the Government, by an attorney or other individual or other individual who is authorized and qualified to represent persons before an Immigration Court." (DE C; GE 5, 6, 7, and 8).

Third, at his first hearing, the IJ continued the hearing to allow Méndez the opportunity to

---

[9] The list of legal service providers is dated 2001. (ECF No. 30-2). Méndez was given the list on April 12, 2006. (ECF No. 30-4 at 2). While the list is supposed to be updated quarterly, *see* 8 CFR § 1003.61(b), Méndez fails to argue how this regulatory violation rises to the level of a due process violation. Moreover, the list contains telephone numbers for immigration service providers that are still current.

contact the legal service providers so that he could be represented during the proceedings if he so desired and clearly told him that "[i]f you don't have an attorney in two weeks you're going to have to speak for yourself." (ECF No. 30-4 at 5). That was the only continuance given to Méndez before the removal hearing started, although the removal process did not culminate until the fifth and final hearing. To be sure, 14 days might not have afforded a non-English speaking detainee such as Méndez sufficient time to obtain an attorney. *See Lara v. Barr*, 962 F.3d 45, 55 (1st Cir. 2020) (highlighting the difficulties non-English speaking detainees face in obtaining counsel). But he fails to show (or cite any caselaw for that matter) how the denial of additional time to begin the hearing in his case, which then spanned for about two months without an attorney ever showing up, amounted to a due process violation.

Lastly, and crucial here, Méndez argues, with record support, that because he was not informed he had a right to an attorney *on appeal*, he should be exempted from the administrative exhaustion requirement. In other words, Méndez's withdrawal of his appeal was not intelligent or knowing. The government's 22-page response to Méndez's motion to dismiss is noticeably silent as to whether Méndez was in fact advised of his right to counsel on appeal, waiving any response. *See Igartúa v. United States*, 626 F.3d 592, 603 (1st Cir. 2010). After the IJ announced his ruling at the final hearing, he gave a lengthy explanation of Méndez's right to appeal, but he made no mention of having the right to an attorney for an appeal. (*See* ECF No. 30-4 at 48-49). This failure cannot be cured by the IJ's initial advice because the IJ cabined those expressions with "in this hearing." (ECF No. 30-4 at 2). Nor can the Notice of Hearing documents bridge that gap. Each one advises Méndez of his upcoming hearing date before the IJ and tells him he can be represented "in these proceedings." (DE C; GE 5, 6, 7, and 8). And it was not the only time Méndez did not receive notice. Recall that the IJ also failed to inform Méndez that he could appeal his detention order. Thus, viewing the existing record, this failure to inform Méndez of his right to counsel on appeal following procedural missteps that placed in doubt

whether the right to counsel was ever meaningfully effectuated (i.e., incorrectly subjected to mandatory detention without discussion, not being informed about the right to appeal the detention order, the IJ's unfortunate remarks as to the process of retaining counsel, the out-of-date list of legal service providers, and the single two-week continuance to retain counsel for a Spanish-speaking detained noncitizen) create a due process violation and therefore an exception to exhausting his administrative remedies under 8 U.S.C. § 1326(d)(1).

### B.  Judicial Review

Under 8 U.S.C. § 1326(d)(2), Méndez must show that he was deprived of judicial review. However, given that I have already found that he could not administratively exhaust his remedies because of a due process violation, "these same violations have deprived [him] of the opportunity of judicial review." *United States v. Boliero*, 923 F. Supp. 2d 319, 331 (D. Mass. 2013) ("In cases where the alien failed to appeal a deportation order because of a violation of due process, preventing a collateral attack on this deportation order when it is an element of a criminal offense would constitute a further denial of due process."). I therefore move to the third and final section of the analysis.

### C.  Fundamental Unfairness

Lastly, 8 U.S.C. § 1326(d)(3) requires a noncitizen to show that "the entry of the order was fundamentally unfair." To prove fundamental unfairness requires a defendant to show that there was procedural error and prejudice. *Luna*, 436 F.3d at 319 ("Under this prong, courts uniformly require a showing of procedural error and prejudice"). "[A] deprivation of a right to seek judicial review during the deportation proceeding permits a collateral challenge, and therefore must qualify as procedural error for § 1326(d) purposes." *Walkes,* 2017 U.S. Dist. LEXIS 10367 at *12. Prejudice is defined as "a reasonable likelihood that the result would have been different if the error in the deportation proceeding had not occurred." *United States v. Loaisiga*, 104 F.3d 484, 487 (1st Cir. 1997). Simply put, "a reasonable likelihood that [the defendant] would have received relief from deportation." *Luna*, 436

16

F.3d at 321.

Méndez argues that the entry of the order of removal was fundamentally unfair because his Connecticut drug possession conviction was not a removable offense. (ECF No. 30 at 11-15). The IJ determined that Méndez was removable under 8 U.S.C. § 1227(a)(2)(B)(i) due to his conviction for possession of controlled substances under Conn. Gen. Stat. § 21a-27(a). Section 1227(a)(2)(B)(i) provides that:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

8 U.S.C. § 1227(a)(2)(B)(I). But, while Méndez was convicted of possession of a controlled substance, his state conviction under Conn. Gen. Stat. § 21a-279(a) did not, in fact, render him removeable. As explained by the Second Circuit Court of Appeals, "[b]ecause section 21a-279(a) punished conduct that was not criminal under the CSA, [the noncitizen]'s conviction is not related to a controlled substance. 'As the categorical approach requires, we look no further….'" *Hnatyuk v. Whitaker*, 757 Fed. Appx. 10, 13 (2d Cir. 2018) (quoting *Hylton v. Sessions*, 897 F.3d 57, 63 (2nd Cir. 2018)). I adopt the reasoning in *Hnatyuk*, which I find to be persuasive, and reject the government's arguments to the contrary.

To sum up, Méndez was charged with multiple crimes but convicted solely of possession of controlled substances under Conn. Gen. Stat. § 21a-279(a). The Connecticut statute is overbroad because at the time of Méndez's conviction it included substances beyond those contained in the Controlled Substances Act. Had Méndez obtained an attorney on appeal, there is a reasonable likelihood that a correct application of the law would have resulted in Méndez not being deported. Nothing more is needed to find that Méndez's order of removal was fundamentally unfair.

## CONCLUSION

For the aforementioned reasons, I recommend that Méndez's motion to dismiss the indictment be **GRANTED**.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to it must be specific and must be filed with the Clerk of Court within fourteen days from the date it is filed. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30-31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico this May 29, 2026.

*s/ Mariana E. Bauzá-Almonte*
MARIANA E. BAUZÁ-ALMONTE
United States Magistrate Judge

18